O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS AYER, an individual; ALEXIS AYER, an individual; and HOVIK GROZIAN, an individual,<br><br>             Plaintiffs,<br><br>       v.<br><br>MICHAEL WHITE, an individual; DAVID GREEN, an individual; R4U VENTURES, a Texas limited liability company; and DOES 1-50 inclusive,<br><br>             Defendants. | CV 21-08773-RSWL-RAOx<br><br>**ORDER re: Motion to Dismiss** [12] |

Currently before the Court is the Motion to Dismiss filed by Defendants Michael White, David Green, and R4U Ventures (collectively, "Defendants"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** the Motion.

1    I.   **BACKGROUND**

2    **A.   Factual Background**

3         The Complaint alleges as follows:

4         Plaintiffs are all individuals residing in

5    California.  Compl. ¶¶ 1-3, ECF No. 1.  Defendants

6    Michael White and David Green are individuals residing

7    in Texas.  Id. ¶¶ 4-5.  Defendant R4U Ventures, LLC

8    ("R4U") is a limited liability company organized under

9    Texas law with its principal place of business in Texas.

10   Id. ¶ 6.

11        In February 2021, Defendant White sent an email to

12   Plaintiff Thomas Ayer offering to sell him a lot in

13   Texas for $40,000.  Id. ¶ 16; Compl. Ex. A, ECF No. 1-1.

14   For an additional $90,000 per lot, Defendants offered to

15   construct a new single-family home for rental purposes

16   using Defendants' lot acquisition teams, lenders,

17   building crews, refinance lenders, and property

18   management company.  Compl. ¶ 16; Compl. Ex A.  In April

19   2021, Defendant Green similarly solicited Plaintiff

20   Grozian by proposing contracts for the sale of two Texas

21   properties to Grozian.  Compl. ¶ 17.  Plaintiffs agreed

22   to the terms of Defendants' offers and purchased a total

23   of seven Texas properties from Defendants.[1]  Id. ¶¶ 19,

24   21.

25     Each transaction involved the sale of a vacant,

26   _____

27        [1] Defendants received $40,000 for each of the seven Texas
     properties as follows: $160,000 from Plaintiff Thomas Ayer,
     $40,000 from Plaintiff Alexis Ayer, and $80,000 from Plaintiff
28   Hovik Grozian.  Id. ¶ 24.

2

unimproved lot in Texas to one of the California Plaintiffs and construction of a new house suitable for rent within 90-120 days or less.  Id. ¶ 22.  Once R4U received deposits from Plaintiffs, Defendants placed deeds for the vacant lots in escrow to be transferred to Plaintiffs in exchange for the remaining amount owed. Id. ¶ 19.  Defendants also formed a Texas limited liability company for each Plaintiff (the "Texas LLCs") on their behalf.[2]  Id. ¶ 23.  For each LLC, Defendants listed their own lawyer as the registered agent for service of process.  Id.

None of the unimproved lots had a market value greater than $4,000, but the value to Plaintiffs came from the promised features of Defendants' lot acquisition teams, building crews, and competent property management.  Id. ¶ 24.  In total, Defendants received $394,942 from Plaintiffs, comprised of $280,000 in purchase money funds and $114,942 in advances in the form of bank draws.  Id.

Days after receiving the $114,942 in advances, Defendant White emailed Plaintiffs and asked that Plaintiffs pay Defendants directly rather than work through the bank draw process.  Compl. Ex. D., ECF No. 1-4.  Plaintiffs declined.  Compl. ¶ 28.  By July 2021,

_____

[2] While Plaintiffs initially purchased the properties in their own name, the contracts were later amended to identify each Plaintiff's respective LLC as the buyer of each property.  See Decl. of Michael White in Supp. of Mot. to Dismiss ("White Decl.") Exs. 1C, 1D, 1E, ECF Nos. 12-4, 12-5, 12-6.

more than the promised 90-120 days had passed on Plaintiff Thomas Ayer's original purchases with no progress reports from Defendants.  Id. ¶ 29.  Plaintiffs then traveled from California to each of the seven construction sites in Texas and found each lot undisturbed and unimproved; no work had been performed on six of the seven investments, and only minimal work had started on the remaining property.  Id. ¶ 31.

Plaintiffs demand rescission of all transactions, return of all sums paid to Defendants, and payment of costs, fees, and interest incurred to third parties related to these transactions.  Id. ¶ 36.  Despite a mediation provision in each contract, Defendants have refused Plaintiffs' demands to mediate and to provide evidence of the money received.  Id. ¶ 39.

**B.   Procedural Background**

Plaintiffs filed their Complaint [1] on November 8, 2021.  Defendants filed this Motion [12] on December 2, 2021.  Plaintiffs filed their Opposition [15] on January 4, 2022.  Defendants replied [21] on January 11, 2022.

## II.   DISCUSSION

**A.   Legal Standard**

Federal Rule of Civil Procedure Rule 12(b)(2) authorizes dismissal of an action for lack of personal jurisdiction.  Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  Schwarzenegger v. Fred Martin Motor Co.,

374 F.3d 797, 800 (9th Cir. 2004).  Where the motion is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts" to survive dismissal. Id. (internal quotation marks omitted).  The court may consider evidence presented in affidavits to assist in its determination of jurisdictional issues.  Data Disc, Inc. v. Sys. Tech. Ass'n, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  Although the plaintiff cannot rely on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true and conflicts between statements contained in the parties' affidavits must be resolved in the plaintiff's favor. Schwarzenegger, 374 F.3d at 800.

**B.   Analysis**

Defendants argue that this Court lacks personal jurisdiction over them because they have never conducted business in California and have no connection to this forum.  Defs.' Mot. to Dismiss ("Mot.") 4:21-5:20, ECF No. 12.  Plaintiffs counter that jurisdiction exists because Defendants "used interstate electronic communications" to target Plaintiffs and solicit them to enter various real estate transactions as part of a fraudulent scheme.  Pls.' Opp'n to Mot. ("Opp'n") 2:11-22, ECF No. 15.  Because Plaintiffs concede that general jurisdiction over the Defendants is lacking, the Court addresses only whether the facts giving rise to this Action establish specific jurisdiction over Defendants.

1      1.   Specific Personal Jurisdiction

2          A court may assert specific jurisdiction over a

3      claim for relief that arises out of a defendant's forum-

4      related activities.  Rano v. Sipa Press, Inc., 987 F.2d

5      580, 588 (9th Cir. 1993).  Specific personal

6      jurisdiction is established if a plaintiff can show: (1)

7      the defendant has performed some act or transaction

8      within the forum or purposefully availed himself of the

9      privileges of conducting activities within the forum;

10     (2) the plaintiff's claim arises out of or results from

11     the defendant's forum-related activities; and (3) the

12     exercise of jurisdiction over the defendant is

13     reasonable.  Axiom Foods, Inc. v. Acerchem Int'l, Inc.,

14     874 F.3d 1064, 1068 (9th Cir. 2017).  The plaintiff

15     bears the burden of satisfying the first two elements.

16     Id.  "If the plaintiff meets that burden, the burden

17     shifts to the defendant to present a compelling case

18     that the exercise of jurisdiction would not be

19     reasonable."  Id. at 1068-69 (internal quotations marks

20     omitted).

21         Plaintiffs have failed to establish the first

22     element of the test for specific jurisdiction.  Because

23     this determination is dispositive, the Court need not

24     address the latter two prongs of the analysis.

25              a.   Purposeful Availment and Purposeful

26                   Direction

27         A purposeful availment analysis is most often used

28     in suits sounding in contract, while a purposeful

6

direction analysis is most often used in suits sounding in tort.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  Here, Plaintiffs assert nine causes of action that include both tort and contract claims.[3]  See generally Compl.  Because both tort and contract claims are alleged, the Court analyzes Defendants' activities under both the purposeful availment and purposeful direction tests.  See Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015).

i. Purposeful Availment

For contract claims, a court has personal jurisdiction over a defendant only where the defendant has "purposefully availed himself of the privilege of doing business in a forum state . . . such as [by] executing or performing a contract there." Schwarzenegger, 374 F.3d at 802.  However, the existence of a contract between plaintiff and defendant does not automatically establish minimum contacts in the plaintiff's home forum; rather, there must be "actions by the defendant *himself* that create a substantial connection with the forum State."  Picot, 780 F.3d at 1212 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)).  In other words, the defendant must have a relationship to the forum state beyond just its

---

[3] The nine claims are: 1) violation of Civil RICO (18 U.S.C. § 1961); 2) fraud; 3) negligent misrepresentation; 4) breach of fiduciary duty; 5) violation of California Penal Code § 496; 6) avoidance of fraudulent transfers; 7) recovery of fraudulent transfers; 8) breach of contract; and 9) unjust enrichment.  See generally Compl.

relationship to the plaintiff who resides there.  Id. at
1212-13.  "A defendant must have performed some type of
affirmative conduct which allows or promotes the
transaction of business within the forum state.  In
determining whether such contacts exist, [courts]
consider prior negotiations and contemplated future
consequences, along with the terms of the contract and
the parties' actual course of dealing."  Id. at 1212
(internal quotation marks and citations omitted).

Plaintiffs have failed to establish that Defendants
purposefully availed themselves of the privileges of
California.  The Complaint refers to Defendants'
solicitation of California residents to enter into the
sales transactions involving the Texas properties.  See
Compl. ¶¶ 16-17.  But even if Defendants initiated the
transaction with Plaintiffs, which Defendants dispute
through their supporting declarations, Defendants'
solicitation of Plaintiffs alone is insufficient to
support a finding of purposeful availment.  Other
considerations weigh strongly against a finding that
Defendants purposefully availed themselves of the
privileges of California.

Notably, all preliminary negotiations took place
via electronic communications, and Defendants were never
physically present in California at any point during
this process.  See Coast Equities, LLC v. Right Buy
Properties, LLC, 701 F. App'x 611, 613 (9th Cir. 2017)
(holding that contract negotiations between real estate

developers and investors conducted via email and phone
communications were not sufficient to establish
purposeful availment).  Additionally, the contracts
concerned only Texas properties, all of the relevant
construction was to be performed in Texas, and there is
no evidence that Defendants intended the transaction to
require any action in California or expected it to have
any effect in California whatsoever.  See Liggett v.
Utah Higher Educ. Assistance Auth., No. 8:19-cv-01589-
JLS-ADS, 2020 WL 1972286, at *4 (C.D. Cal. Feb. 3, 2020)
(finding a lack of personal jurisdiction where
defendants made no purposeful efforts to target the
California market and "had no reason to know that its
contractual relationship with [plaintiff] might have a
substantial effect in California").

In sum, Plaintiffs' allegations fail to establish
that the formation, terms, or actual performance of the
contracts created any contacts between Defendants and
California.  The contracts at issue therefore did not
create sufficient minimum contacts to subject Defendants
to personal jurisdiction in California.

### ii.  Purposeful Direction

Courts apply a three-part effects test when
analyzing purposeful direction in the tort context.
Schwarzenegger, 374 F.3d at 803 (citing Dole Food Co. v.
Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).  The
plaintiff must sufficiently allege that the defendant:
(1) committed an intentional act, (2) expressly aimed at

1  the forum state, (3) that caused harm the defendant
2  knows is likely to be suffered in the forum state.  Id.
3     Plaintiffs sufficiently allege that Defendants
4  committed intentional acts that Defendants knew would
5  cause Plaintiffs harm in California.  See Compl. ¶¶ 17-
6  18, 34-39.  However, the Court lacks jurisdiction over
7  Defendants under the effects test because Plaintiff has
8  failed to provide facts showing that Defendants
9  expressly aimed their acts at California.
10     Like the purposeful availment test, the "expressly
11  aimed" analysis "looks to the defendant's contacts with
12  the forum State itself, not the defendant's contacts
13  with persons who reside there."  Picot, 780 F.3d at
14  1214.  "Mere injury to a forum resident is not a
15  sufficient connection to the forum."  Walden, 571 U.S.
16  at 290.  Rather, "an injury is jurisdictionally relevant
17  only insofar as it shows that *the defendant* has formed a
18  contact with the forum State.  The proper question is
19  not where the plaintiff experienced a particular injury
20  or effect but whether *the defendant's conduct* connects
21  *him* to the forum in a meaningful way."  Janus v.
22  Freeman, 840 F. App'x 928, 930 (9th Cir. 2020) (quoting
23  Walden, 571 U.S. at 290).
24     Plaintiffs argue that they have established
25  Defendants' "express aiming" at California because the
26  Complaint alleges that Defendants targeted California
27  residents and caused them to suffer harm and losses in
28  California.  Opp'n 8:2-9.  These allegations are

insufficient to establish jurisdiction under <u>Walden</u>,
however.  The Supreme Court has made clear that "a
theory of individualized targeting, which relies on a
plaintiff's strong connection to a forum and the
defendant's knowledge that the plaintiff is a resident
of that forum and will experience foreseeable harm in
that forum, on its own will no longer support a finding
of express aiming." <u>Liggett</u>, 2020 WL 1972286, at *6
(internal quotation marks omitted) (quoting <u>Deveroux v.
TT Mktg., Inc.</u>, No. 1:18-CV-487 AWI SAB, 2018 WL
3968249, at *2 (E.D. Cal. Aug. 16, 2018)).

Plaintiffs describe various acts by Defendants that
were aimed at Plaintiffs directly, <u>see</u> Opp'n 4:5-5:7,
but none of those acts were aimed at California.  The
allegedly tortious acts were not performed in
California, and all properties and work to be performed
pursuant to the contracts were located in Texas.  <u>See</u>
Compl. ¶¶ 18-22.  Defendants' email exchange with
Plaintiffs who happen to live in California is
insufficient to establish that Defendants purposefully
directed their activities toward California.  <u>See</u> <u>Coast
Equities</u>, 701 F. App'x at 613.  In short, Plaintiffs'
claims must fail because Plaintiffs are "the only link
between [Defendants] and the forum." <u>See</u> <u>Walden</u>, 571
U.S. at 285.

Plaintiffs' arguments that Defendant caused them
injury in California are similarly unpersuasive.  The
financial losses Plaintiffs allege are purely personal

1    and are not "tethered to [California] in any meaningful
2    way." Id. at 290.  Plaintiffs' injuries do not aid
3    their jurisdictional argument because Plaintiffs would
4    have suffered the same loss in any state they happened
5    to be in at the time Defendants committed their alleged
6    misconduct in Texas.  Id.

7        In sum, Plaintiffs have failed to establish facts
8    indicating that Defendants expressly aimed any conduct
9    at California.  Because Plaintiffs have failed to meet
10   both the purposeful availment and purposeful direction
11   tests, Plaintiffs cannot establish personal jurisdiction
12   over Defendants for any of their claims.  The Court
13   therefore **GRANTS** Defendants' Motion and dismiss this
14   Action in its entirety for lack of personal
15   jurisdiction.

16       2.  Leave to Amend
17       "The court should give leave [to amend] freely when
18   justice so requires."  Fed. R. Civ. P. 15(a)(2).  In the
19   Ninth Circuit, "Rule 15's policy of favoring amendments
20   to pleadings should be applied with 'extreme
21   liberality.'"  United States v. Webb, 655 F.2d 977, 979
22   (9th Cir. 1981).  "Leave to amend should be granted 'if
23   it appears at all possible that the plaintiff can
24   correct the defect.'"  Balistreri v. Pacifica Police
25   Dept., 901 F.2d 696, 701 (9th Cir. 1988) (quoting Breier
26   v. Northern California Bowling Proprietors' Ass'n, 316
27   F.2d 787, 790 (9th Cir. 1963)).  Here, it is conceivable
28   that Plaintiffs may cure the defect in their Complaint

as to jurisdiction by alleging facts establishing Defendants' contacts with California.  The Court therefore grants Plaintiffs 30 days' leave to amend their Complaint.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' 12(b)(2) Motion and dismisses Plaintiffs' Complaint **without prejudice**.  Plaintiffs are granted 30 days' leave to amend their Complaint to include facts establishing personal jurisdiction over Defendants.

**IT IS SO ORDERED.**

DATED: March 4, 2022

/s/ Ronald S.W. Lew
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge